UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (DKT. 42)**

## I.    Introduction

Sound View Innovations, LLC ("Plaintiff") brought this patent infringement action against Hulu, LLC ("Defendant") on June 2, 2017. Complaint, Dkt. 1. On August 15, 2017, Plaintiff filed a First Amended Complaint ("FAC"). Dkt. 40. The FAC alleges that Defendant has infringed U.S. Patent Nos. 5,806,062 (the "'062 Patent"), 6,125,371 (the "'371 Patent"), 6,502,133 (the "'133 Patent"), 6,708,213 (the "'213 Patent"), 6,757,796 (the "'796 Patent"), and 9,462,074 (the "'074 Patent").

On August 17, 2017, Defendant brought this Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 129b)(6) ("Motion"). Dkt. 42-1. In support of the Motion, Defendant argues that the '371 Patent, the '133 Patent, the '062 Patent, and the '074 Patent are invalid because they are directed to subject matter that cannot be patented under 35 U.S.C. § 101. Plaintiff opposed the Motion (Dkt. 43), and Defendant replied. Dkt. 44. A hearing was held on November 13, 2017 and the matter was taken under submission. Dkt. 50.

On February 8, 2018, the parties filed a Joint Stipulation requesting an order to dismiss Count Three of the FAC, which alleged infringement of the '133 Patent. *See* Dkt. 59. The Joint Stipulation was granted. This made the Motion moot as to the '133 Patent, but not as to the '371 Patent, the '062 Patent, and the '074 Patent. Dkt. 60.

For the reasons stated in this Order, the Motion is **MOOT** as to all claims of U.S. Patent No. 6,502,133, and is **DENIED** as to the remaining claims.

## II.    Factual Background

    A.    The Parties

Plaintiff is a Delaware company whose principal place of business is in New Jersey. FAC ¶ 4. The FAC alleges that Plaintiff is "an intellectual property licensing company" with "more than 900 active and pending patents worldwide, including approximately 475 active U.S. Patents." *Id.* at ¶ 1. The patents at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

issue in this action were "developed by researchers at Alcatel Lucent ("Lucent") and its predecessors." *Id.* ("Researchers at Lucent's Bell Laboratories have developed a wide variety of key innovations that have greatly enhanced the capabilities and utility of computer systems and networks.").

Defendant Hulu is a Delaware company, whose principal place of business is in California. FAC ¶ 5. Hulu claims to be "one of this country's most innovative technology companies and a pioneer of the concept of making entertainment content available over the Internet." Dkt. 42-1 at 1.

**B.    Overview of the Technology**

**1.    In General**

The three patents that remain at issue in this Motion are not related. However, all of them generally disclose systems, methods, devices, and articles of manufacture in the field of computer technology. Each is specifically directed to data organization, storage and analysis.

**2.    The '371 Patent**

The '371 Patent issued September 26, 2000. It is titled "System and Method for Aging Versions of Data in a Main Memory Database." *See also* Dkt. 40 (FAC), Ex. B. The '371 Patent generally discloses "aging" older versions of data after "update transactions" have led to newer, modified versions of the data. '371 Patent at 1:6–8. The '371 Patent explains that in prior art systems, although the concept of multi-versioning data had certain benefits, it caused inefficient use of main memory capacity. *Id.* at 2:36–52. The '371 Patent purports to address these issues by "introduc[ing] the broad concept of efficiently and effectively freeing allocated volatile memory through aging to timely increase the data capacity of [a] database." *Id.* at 2:60–62. The '371 Patent describes the concept of "aging" and the new, claimed efficiency as follows: "When a given data record version is no longer needed by current (or future) transactions, it may be deleted and the memory space associated therewith reclaimed ('aging the version')." *Id.* at 4:32–35.

The '371 Patent has 20 claims. Three of them are independent claims -- Claims 1, 8, and 15. According to Plaintiff, "[t]he claimed inventions introduced a new scheme for storing and organizing multiple versions of the same file based on timestamps and measurable characteristics of the memory, thereby leveraging the advantages of multi-versioning while conserving memory resources." Dkt. 43 at 1. The FAC alleges that Defendant infringes, "[f]or example," Claim 8 of the '371 Patent. Dkt. 40 at ¶65. Claim 8 recites:

8.    A method of operating a processing system for use with a database of data records, said database stored in a memory, comprising the steps of:
assigning a time stamp to transactions to be performed on said database;
creating multiple versions of ones of said data records affected by said transactions that are update transactions;
monitoring a measurable characteristic of said memory; and
deleting ones of said multiple versions of said ones of said data records in response to said time stamp and said measurable characteristic thereby to increase a capacity of said memory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

Claim 1 is a system claim that requires a "time stamping controller," "versioning controller," and "aging controller." These "controllers" perform functions similar to the steps disclosed in the method of Claim 8, *i.e.,* assigning a time stamp, creating multiple versions of records, monitoring a measurable characteristic of memory, and deleting data in response to certain information.

Claim 15 is also a system claim. Claim 15 also recites a "transaction processing controller" and a "data record latching controller." A "latch" is "a semaphore—control mechanism that sends a message to other transactions indicating that another transaction is modifying or changing [] data records." '371 Patent at 2:2–5.

### 3.   The '062 Patent

The '062 Patent issued September 8, 1998, and is titled "Data Analysis System Using Virtual Databases." *See also* Dkt. 40, Ex. A. The '062 Patent relates to analyzing a "repository," *i.e.* a collection of source documents and associated database, using software "operators." '062 Patent at 1:23–43. The '062 Patent explains that an "operator" is a "computer program that extracts or converts information from a repository." *Id.* The '062 Patent states that "existing repository analysis systems" have shortcomings because operators are generally designed for a single application in a closed system. The '062 Patent discloses apparatuses and methods for using multiple operators in a database with a single associated "schema," *i.e.* "format of the records and fields." According to Plaintiff, "[t]he novel software structure of the claimed inventions enabled users to engineer their own purpose-built data analysis applications with reusable interoperable software operators." Dkt. 43 at 2.

The '062 Patent has 46 claims. Ten of them are independent claims -- Claims 1, 7, 12, 14, 18, 23, 28, 34, 35, and 36. The FAC alleges that Defendant infringes, "[f]or example," Claim 14 of the '062 Patent. Dkt. 40 at ¶49. Claim 14 recites:

> 14.    A method for processing information comprising the steps of:
> providing a plurality of software operators each configured to receive a virtual
> database having a first schema, for processing information contained in
> said virtual database, and for outputting a virtual database having said first
> schema; and
> combining at least two of said software operators to create an application.

Like Claim 14, Claims 1 and 7 recite a "data processing apparatus" that requires a plurality of operators for processing data and outputting a database having a "first schema."

Claim 12 recites an "apparatus for processing source information" that includes: (i) an initial operator for processing source information from an external format into a format with a "first schema" (ii) "at least one query operator" for processing information; and (iii) a terminal operator for processing the data back from the "first schema" into the external format.

Unlike Claims 1–17, Claims 18–46 relate to apparatuses and methods for "analyzing the difference between a first document and a second document."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

      4.   <u>The '074 Patent</u>

The '074 Patent issued October 4, 2016 and is entitled "Method and System for Caching Streaming Multimedia on the Internet." *See also* Dkt. 40, Ex. F. The '074 Patent states its goal as: "existing caching techniques are enhanced to better support streaming multimedia over the Internet." '074 Patent at 3:4–6. The '074 Patent seeks to reach this goal through a collection of "helper servers" that "operate as caching and streaming agents inside the network." *Id.* at 3:3–5. The helper servers "implement several methods specifically designed to support streaming multimedia, including segmentation of streaming multimedia objects (SM objects) into smaller units (i.e., chunks), cooperation of the HSs, and novel cache placement and replacement policies of the constituent units (chunks which make up the SM objections)." *Id.* at 3:7–12.

The '074 Patent has nine claims, including four that are independent -- Claims 1, 3, 6, 9. A Certificate of Correction was also filed in the '074 Patent that revised the words of Claim 9. The FAC alleges that Defendant infringes, "[f]or example," "at least uncorrected" Claim 9. Dkt. 40 at ¶185. The uncorrected version of Claim 9 recites:

> 9.    A method for managing storage of a streaming media (SM) object in a network having a content server which hosts SM objects for distribution over said network through a plurality of servers to a plurality of clients, said method comprising:
> > i) receiving said SM object;
> > ii) determining whether there is a disk space available on one of said plurality of servers;
> > iii) storing said SM object at said at least one HS if it is determined that there is sufficient disk space available; and
> > iv) if it is determined that there is insufficient disk space available to store the received SM object, for each of a plurality of SM objects stored in said disk space, deleting only a portion of said SM object, whereby the deletion of said portions of said SM objects results in sufficient disk space being available for storage of the received SM object.

The corrected version of claim 9 changes the phrase "said at least one HS" in step (iii) to "said one of said plurality of servers."

Claims 1, 3, and 6 are also method claims. Steps (i)–(iii) of Claims 1, 3, and 6 are substantially similar to steps (i)–(iii) of Claim 9. Step (iv) of Claims 1, 3, and 6 are more detailed than step (iv) of Claim 9. In Claims 1, 3, and 6, step (iv) requires identifying "chunks" of the stored SM objects and replacing/deleting "segments" or "portions" of the identified chunks.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

III.   **Analysis**

    A.   Legal Standards

        1.   Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." As the Supreme Court has explained in *Ashcroft v. Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [*Id.*] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557.

556 U.S. 662, 678 (2009).

*Iqbal* identifies "[t]wo working principles" that underlie the standard that applies to a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

        2.   Section 101 Analytical Framework

"Section 101 defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Section 101 thus specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski*, 561 U.S. at 601.

Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has identified three exceptions to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). These exceptions are not required by the statutory text, but are consistent with the idea that certain discoveries "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). Consistent with these principles is that "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

Consequently, the Supreme Court has required that "[i]f there is to be invention from such a discovery, it must come from the application of the law of nature to a new and useful end." *Funk Bros.*, 333 U.S. at 130. These rules apply equally to product and process claims. *Gottschalk v. Benson*, 409 U.S. 63, 67-68 (1972).

*Alice* is the most recent statement on the proper application of these principles. *Alice* expanded the two-step approach for resolving Section 101 issues first adopted in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 566 U.S. at 77). If this standard is satisfied, then in the second step the court must ask "[w]hat else is there in the claims." *Id.* This requires consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id.* (citing *Mayo*, 566 U.S. at 78–79). In applying this second step analysis, a court must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citing *Mayo*, 566 U.S. at 72–73).

In two recent decisions, the Federal Circuit has highlighted facts potentially significant to a Section 101 analysis. *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) reiterated that "whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Id.* at 1368 (citations omitted). *Berkheimer* noted that, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Id.* at 1369. *Berkheimer* determined that some of the claims at issue were patent-ineligible based on the record presented because they did not "recite any of the purportedly unconventional activities disclosed in the specification." *Id.* For other claims, there was at least a genuine issue of material fact in light of the specification regarding whether the claimed steps were performed in an inventive manner. *Id.*

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) echoed *Berkheimer*. *Aatrix* added that allegations in a complaint, which are properly pleaded, to the effect that individual elements of a claim are not well-understood, routine, or conventional, can be sufficient to survive a motion to dismiss based on invalidity under Section 101. *Id.* at 1128. *Aatrix* emphasized that there was no evidence in the patent itself showing that a particular disputed claim limitation was conventional. *Id.* However, "[w]hether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact. And in this case, that question cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Id.*

     B.     Application

          1.     <u>The '371 Patent</u>

The FAC alleges that the '371 Patent "generally relates to an improved multi-versioned database management system and method that creates multiple versions of data records affected by update transactions and increases capacity of memory by deleting versions of data records in response to associated time stamps and a measurable characteristic of the memory." Dkt. 40 at ¶ 52. The FAC alleges that prior art databases employed techniques that conflicted with "efforts to utilize main memory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

capacity efficiently because main memory continuously expended processing resources collecting data record versions that were no longer needed." *Id.* at ¶ 56. According to the FAC, "[t]he '371 patent solved this computer-based problem—that of lacking an efficient means to reclaim main memory space no longer used by multi-version techniques—by logically and economically aging data record versions in the database." *Id.* These allegations are consistent with, and generally track, statements in the '371 Patent specification. *See* '371 Patent, at 1:12–3:26. At the hearing, Plaintiff emphasized its characterization of the relevant technology by noting that: (i) the creation of computer databases made it necessary for a system to "age" files; and (ii) in designing previous computer database systems, computer engineers caused files to be aged immediately, creating inefficiencies in processing power. For these reasons, Plaintiff contends that the '371 Patent solves a computer-specific problem by asking "when a version should be deleted, not when it can be deleted."

Claim 8 of the '371 Patent implements these concepts. It does so by using a four-part method: (i) assigning a time stamp to transactions; (ii) creating multiple versions of data records; (iii) monitoring a measureable characteristic; and (iv) deleting certain versions of data records "in response to said time stamp and said measureable characteristic thereby to increase a capacity of said memory."

The statements in the specification, the allegations in the FAC and the language of Claim 8 are sufficient to state a claim of infringement. Thus, viewed collectively, they show that the FAC sufficiently alleges that deleting data in response to the combination of a particular time stamp and a measureable characteristic, "thereby to increase a capacity of said memory" shows an inventive concept to the claims. *See also* Dkt. 43 at 12 (argument that in Step 1 the '371 Patent claims disclose "the aging of certain data based on variables ***unrelated*** to the content of the data itself: the measurable characteristic of memory on which the data is stored and the time stamp on transactions to be performed." (emphasis in original)); *id.* at 13 (arguing at Step 2 that "Hulu acknowledges [], before the invention in the '371 Patent, again was performed continuously, which wasted processor resources. The ***sum*** of the individual limitations of the '371 claims is a scheme that provides the benefits of creating and storing copies of old versions without the inefficiencies of the prior art." (emphasis in original)) Whether this recitation reflects a protectable, inventive concept is a question of fact. *See Berkheimer*, 881 F.3d at 1370 (claims "directed to the arguably unconventional inventive concept described in the specification" presented questions of material fact not amenable to resolution at motion to dismiss stage).

For the foregoing reasons, the Motion is **DENIED** as to the claims of the '371 Patent.

2.    The '062 Patent

Once again, the Section 101 issues raised as to the '062 Patent are not appropriate for resolution on a motion to dismiss. The parties' competing characterizations of the claims reflect a dispute as to the scope and relevance of the operators claimed in the '062 Patent. Defendant contends that an operator is described in the specification as any "computer program that extracts or converts information from a repository." Dkt. 42-1 at 14 (citing '062 Patent at 1:33–34). Defendant adds that the '062 Patent has not "invented any new type of software operator." *Id.* at 14–15 (citing '062 Patent at 3:33–4:30, 4:57–59). Plaintiff responds that the '062 Patent "is directed to a specific software structure that supports the flexible creation of cohesive software applications using ***reusable interoperable software operators***." Dkt. 43 at 17 (emphasis added). The allegations of the FAC are consistent with this position. They include that "[a]t the time of the invention of the '062 patent, in existing repository analysis systems, operators were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 11, 2018 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

designed for single applications" and "there was no convenient mechanism for combining the various operators to create new applications." Dkt. 40 at ¶ 38. The FAC also alleges that in prior art systems, after an operator was applied, the output could not be processed by external systems. *Id.* at ¶ 39. The FAC then alleges that, "[t]he inventors of the '062 patent solved these discrete computer-based problems by providing an apparatus and method for creating data analysis applications using reusable software operators." *Id.* at ¶ 40. These allegations are consistent with the statements in the '062 Patent specification. *See* '062 Patent at 1:11–2:19; *see, e.g., id.* at 2:3–5 ("The present invention provides an apparatus and method for creating data analysis applications using reusable software operators.").

Defendant acknowledges that the parties dispute the scope of the operators described by the '062 Patent and then argues that "Claim 14 does not require that the claimed 'software operators' be reusable or interoperable." Dkt. 44 at 7. The parties have not specifically sought construction of the term "operator," but some of their other claim construction disputes continue to relate to whether the claims of the '062 Patent are drawn to operators that are reusable and interoperable. This dispute is relevant to the Section 101 analysis. As noted, the FAC alleges that, prior to the '062 Patent, in "existing repository analysis systems, operators were designed for single applications." Dkt. 40 at ¶ 38. Thus, Plaintiff is asserting that the types of operators claimed in the '062 Patent are unconventional because they are reusable. Whether reusable operators are unconventional presents a question of fact. *See Aatrix*, 882 F.3d at 1128. However, that factual dispute will not be material or ripe until the scope of the claims is fully determined.

For these reasons, given the parties' dispute over claim scope and the allegations in the FAC, an analysis of the patentability of the '062 Patent cannot be conducted on a motion to dismiss. Therefore, the Motion is **DENIED** as to the claims of the '062 Patent.

3.   The '074 Patent

The '074 Patent explains that multimedia files are often very large, which makes it difficult to store and send them to a "client" computer. '074 Patent at 2:28–45. The '074 Patent states that prior art streaming methods allowed client computers to "begin[] to present the information as it arrives . . .", rather than waiting for the entire data set to arrive." '074 Patent at 1:38–49. However, according to the patent, the design of the associated networks for delivering streaming data to a client computer presented network congestion problems and delays. *Id.* at 1:58–2:13. The '074 Patent claims to address these issues by creating a network of helper servers. *Id.* at 2:66–3:12. The '074 Patent describes segmenting streaming multimedia objects into smaller "chunks" on the helper servers to reduce the time needed to stream files. *Id.* This goal is reflected in the claims, which recite a network with a "content server" and a plurality of additional servers, where a media object is saved to the plurality of servers by deleting "only a portion" of other media objects across the servers. *See, e.g., id.* at Claim 9.

Unlike a general claim to data storage, the claims of the '074 Patent relate to a specific computer architecture. According to the '074 Patent specification, the claimed plurality of servers for saving media objects is an important aspect of the claims. Thus, the contention is that the arrangement of these servers helps to address the problem of network congestion and long delays. This is similar to the claims at issue in *Visual Memory*, where the overall architecture of the claimed computer limitations was material to the determination that, for purposes of considering a motion to dismiss, the claims disclosed solutions to computer-specific problems rather than abstract ideas. *See, e.g., Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) ("Our review of the [] claims demonstrates that they are directed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | | Date | April 11, 2018 |
|---|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | | |

an improved computer memory system, not to the abstract idea of categorical data storage.").

Moreover, the claims at issue purport to provide a specific means of solving a computer-specific problem: The claims specifically recite deleting only portions, segments, or "chunks" of existing streaming media objects to make room for a new streaming media object to be stored across the plurality of servers. At the hearing, Defendant argued that this aspect of the claims of the '371 Patent represented the only "claimed inventive step," and that this process is no different than "having a series of file cabinets [and] looking through them to see which ones have space." Dkt. 52 (Hearing Tr.), 10:2–4. Although the claim involves the purportedly abstract concept of separating information based on available space, with respect to the Motion, the issue is whether the claims set out a specific way of implementing this concept, using particular computer components interacting and arranged in a specific manner. Based on the information that has been presented in connection with the Motion, it has not been shown that the claims are simply drawn to "categorical data storage." *Visual Memory*, 867 F.3d at 1259.

For the foregoing reasons, the Motion is **DENIED** as to the '074 Patent.

IV.  **Conclusion**

For the reasons stated in this Order, the Motion is **MOOT** as to all claims of U.S. Patent No. 6,502,133, and the Motion is **DENIED** as to the remaining claims; without prejudice to the issues being renewed in a future motion that is based on a factual record.

**IT IS SO ORDERED.**

:

Initials of Preparer    ak