RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
mfenster@raklaw.com
Benjamin T. Wang (SBN 228712)
bwang@raklaw.com
Kent N. Shum (SBN 259189)
kshum@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tel: (310) 826-7474
Fax: (310) 826-6991

DESMARAIS LLP
Alan S. Kellman (admitted *pro hac vice*)
Richard M. Cowell (admitted *pro hac vice*)
C. Austin Ginnings (admitted *pro hac vice*)
Jennifer M. Przybylski (admitted *pro hac vice*)
230 Park Avenue
New York, New York 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

DESMARAIS LLP
Peter C. Magic (SBN 278917)
pmagic@desmaraisllp.com
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Attorneys for Plaintiff Sound View Innovations, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SOUND VIEW INNOVATIONS, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>HULU, LLC,<br><br>            Defendant. | Case No. LACV17-04146 JAK (PLAx)<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION BASED ON THE FOOTPRINT CDN**<br><br>Date: April 15, 2019<br>Time: 8:30am<br><br>Hon. John A. Kronstadt<br>Courtroom 10B |

1    PLEASE TAKE NOTICE that on April 15, 2019 at 8:30 a.m., or as soon

2  thereafter as the matter may be heard, before the Honorable John A. Kronstadt, located

3  in Courtroom 10B at First Street Courthouse, 350 W. First Street, Los Angeles, CA

4  90012, Plaintiff Sound View Innovations, LLC ("Sound View") will and hereby moves

5  the Court for an Order granting summary judgment of no anticipation of the asserted

6  patents based on the Footprint CDN.

7    This motion is made following the conference of counsel pursuant to L.R. 7-3

8  which took place on February 25, 2018.

9    This motion is based on this Notice of Motion, the attached Memorandum, the

10  declarations and exhibits filed concurrently herewith, and other evidence and argument

11  that may be presented prior to or at the hearing on this matter.

Dated: March 4, 2019

By: _____/s/ Kent N. Shum_____

Marc A. Fenster
Benjamin T. Wang
Kent N. Shum
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tel: (310) 826-7474
Fax: (310) 826-6991
mfenster@raklaw.com
bwang@raklaw.com
kshum@raklaw.com

*Of Counsel:*

DESMARAIS LLP
Alan S. Kellman (admitted *pro hac vice*)
Richard M. Cowell (admitted *pro hac vice*)
C. Austin Ginnings (admitted *pro hac vice*)
Jennifer M. Przybylski (admitted *pro hac vice*)
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401
akellman@desmaraisllp.com
rcowell@desmaraisllp.com
aginnings@desmaraisllp.com
jprzybylski@desmaraisllp.com

Peter C. Magic
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Attorneys for Plaintiff*
*Sound View Innovations, LLC*

RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
mfenster@raklaw.com
Benjamin T. Wang (SBN 228712)
bwang@raklaw.com
Kent N. Shum (SBN 259189)
kshum@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tel: (310) 826-7474
Fax: (310) 826-6991

DESMARAIS LLP
Alan S. Kellman (admitted *pro hac vice*)
Richard M. Cowell (admitted *pro hac vice*)
C. Austin Ginnings (admitted *pro hac vice*)
Jennifer M. Przybylski (admitted *pro hac vice*)
230 Park Avenue
New York, New York 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

DESMARAIS LLP
Peter C. Magic (SBN 278917)
pmagic@desmaraisllp.com
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Attorneys for Plaintiff Sound View Innovations, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| SOUND VIEW INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HULU, LLC, <br><br> Defendant. | Case No. LACV17-04146 JAK (PLAx) <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION BASED ON THE FOOTPRINT CDN** <br><br> Date: April 15, 2019 <br> Time: 8:30am <br><br> Hon. John A. Kronstadt <br> Courtroom 10B |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     BACKGROUND ..................................................................................2

III.    Legal Standards ..................................................................................4

     A.      Summary Judgment..................................................................4

     B.      Anticipation ..................................................................................5

     C.      A Defendant Cannot Establish Invalidity Through Assertions That
The Prior Art Is The Same As The Accused Products. ...........................5

     D.      Conclusory Expert Analysis Is Insufficient To Prove Invalidity..............7

IV.     Argument ..................................................................................................8

     A.      Dr. Chase's "Analysis" Of The Footprint CDN Consists Only Of
Conclusory Assertions That The Footprint CDN Functions
"Substantially The Same Way" As The Accused Products,
Followed By A Claim Chart Consisting Only Of Citations And
Document Excerpts Without Explaining Exactly What In The
Footprint CDN Meets Each Claim Element. ...............................................9

     B.      Hulu's And Dr. Chase's Footprint CDN Theory Fails Because
The Mere Assertion That The Footprint CDN Functioned In
"Substantially The Same Way As The Accused Products" Is
Insufficient To Prove Anticipation As A Matter Of Law......................10

     C.      Dr. Chase's Claim Chart Consisting Solely Of Excerpts Of
Documents And Citations To An Entire Deposition Transcript Is
Insufficient To Meet Hulu's Burden Of Proof.........................................13

V.      CONCLUSION ..................................................................................17

1

## <u>TABLE OF AUTHORITIES</u>

2

3 <u>Cases</u>

4  *01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
5      889 F.3d 735 (Fed. Cir. 2018) ..........................................................................11, 12

6  *Anderson v. Liberty Lobby, Inc.*,
7      477 U.S. 242 (1986)...............................................................................................5

8  *Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*,
9      111 F. App'x 582 (Fed. Cir. 2004) ................................................................7, 17

10 *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
     249 F.3d 1341 (Fed. Cir. 2001) ......................................................................7, 17
11

12 *Celotex Corp. v. Catrett*,
     477 U.S. 317 (1986)...............................................................................................5

13 *Continental Auto. Sys. U.S., Inc. v. Schrader Elecs., Inc.*,
14     No. 11-14525, 2012 WL 12930768 (E.D. Mich. Dec. 3, 2012)................................6

15 *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
16     No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963 (E.D. Tex. July 12, 2016) ..............7

17 *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
18     87 F. Supp. 3d 928 (N.D. Cal. 2015)....................................................................12

19 *Konvin Assocs. v. Extech/Exterior Techs.*,
20     No. 04 C 2544, 2006 WL 2460589 (N.D. Ill. Aug. 21, 2006) ......................8, 16, 17

21 *Mettler-Toledo, Inc. v. Fairbanks Scales, Inc.*,
22     No. 9:06-CV-97, 2008 WL 11348468 (E.D. Tex. Oct. 27, 2008)....................passim

23 *Milos Misha Subotincic v. 1274274 Ontario Inc.*,
     No. SACV 10-01946 AG (PJWx), 2013 WL 3964994
24     (C.D. Cal. Apr. 9, 2013) ......................................................................................16

25 *Netscape Commc'ns Corp. v. Konrad*,
26     295 F.3d 1315 (Fed. Cir. 2002) ............................................................................5

27 *Nextec Applications v. Brookwood Cos.*,
28     703 F. Supp. 2d 390 (S.D.N.Y. 2010) .............................................................6, 12

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
   No. 2:15-cv-621-JRG-RSP, 2016 WL 7743510 (E.D. Tex. Sept. 21, 2016)............7

*Realtime Data LLC v. EchoStar Corp.*,
   No. 6:17-CV-00084-JDL, 2018 WL 6271807 (E.D. Tex. Nov. 29, 2018) ...............6

*Rivera v. Remington Designs, LLC*,
   No. LA CV16–04676 JAK (SSx), 2017 WL 3449615
   (C.D. Cal. July 7, 2017).................................................................................6, 12

*Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002).................passim

*STS Software Sys., Ltd. v. Witness Sys., Inc.*,
   No. 1:04-CV-2111-RWS, 2008 WL 660325 (N.D. Ga. Mar. 6, 2008).........8, 16, 17

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
   279 F.3d 1357 (Fed. Cir. 2002) ....................................................................6

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
   295 F.3d 1292 (Fed. Cir. 2002) ....................................................................5

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
   522 F.3d 1348 (Fed. Cir. 2008) ...........................................................passim

**Statutes**

35 U.S.C. § 102(b) .........................................................................................5

35 U.S.C. § 282.............................................................................................5

**Rules**

Fed. R. Civ. P. 56(a) .....................................................................................4

## I.     INTRODUCTION

Hulu cannot meet its burden to prove that a prior art system referred to as the "Footprint CDN" anticipates any claim of Sound View's patents.  Specifically, the analysis of Footprint offered by Hulu's expert, Dr. Chase, consists of:

- Conclusory assertions that the Footprint CDN meets the claims "under [Sound View's] interpretation" of the claims because it "functioned in substantially the same way as the Accused Products"; and

- A claim chart for which Dr. Chase admitted "he did not write" any of his own explanation and simply hoped the contents "would be clear to [Sound View's] expert," consisting entirely of citations and excerpts that Dr. Chase "might use to put forward opinions" without any explanation of how each claim element is disclosed in the Footprint CDN.

Such proof is legally insufficient to meet Hulu's burden to prove invalidity by clear and convincing evidence.

Dr. Chase's conclusory assertions that the prior art meets the claims "under [Sound View's] interpretation" of the claims because it "functioned in substantially the same way as the Accused Products" is insufficient to meet Hulu's burden because proving anticipation "requires showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008).  "[P]roof that the prior art is identical, in all material respects, to an allegedly infringing product"—though Dr. Chase has not even shown that to be the case here—"cannot constitute clear and convincing evidence of invalidity." *Id.*

Additionally, a claim chart that consists solely of citations to documentation and testimony with no explanation of how cited evidence meets each claim element—as Dr. Chase offered here—is insufficient to meet Hulu's burden.  Specifically, such charts lack the requisite analysis for proving invalidity and are considered conclusory:

"Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and **explain** in detail **how** each claim element is disclosed in the prior art reference." *Schumer v. Laboratory Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (emphasis added); *see Mettler-Toledo, Inc. v. Fairbanks Scales, Inc.*, No. 9:06-CV-97, 2008 WL 11348468, at *4 (E.D. Tex. Oct. 27, 2008) (excluding an expert's opinion based on a claim chart that consisted of citations to documents and depositions, but lacked any analysis "connect[ing] the dots between the exhibit or deposition extract [the expert] points to and his conclusions").

Thus, summary judgment of no anticipation based on the Footprint CDN is appropriate.

## II.   BACKGROUND

In its final invalidity contentions and Dr. Chase's opening expert report, Hulu and Dr. Chase allege that a company referred to as "Webradio" used the Footprint CDN (content distribution network) to deliver audio broadcasts from radio stations in the late 1990s. *See* Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435; UF 2. The Footprint CDN was not included in Hulu's original invalidity contentions, which were served in November 2017. *See* Ginnings Decl., Ex. 2 (Hulu Initial Invalidity Contentions) at 33-56 (listing asserted prior art references and combinations); UF 4. Instead, Hulu did not begin taking any discovery related to this invalidity theory until mid-July 2018, and asserted the Footprint CDN for the first time as prior art in its final invalidity contentions on August 31, 2018. *See* Ginnings Decl., Ex. 3 (Hulu July 17, 2018 Subpoena to Level 3); Ex. 4 (Hulu Final Invalidity Contentions) at 1-2; UF 5, 6. Dr. Chase lamented at his deposition that due to a "late" decision to include the Footprint CDN in his reports, "I would like to have provided you with a more detailed analysis." Ginnings Decl., Ex. 5 (Chase Dep. Tr.), 194:15-19, 200:12-14.

Dr. Chase opines that Webradio's alleged use of the Footprint CDN invalidates

the asserted claims of the '213, '796, and '074 patents based on a conclusory assertion that the Footprint CDN "functioned in substantially the same way as the Accused Products" and that, he asserts, "to the extent the Asserted Patents are infringed, the Footprint CDN product invalidates the patents under the same interpretation." *See* Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435 & n.12.

> [12] I note that under the proper constructions and proper understandings of the claim limitations as discussed in this report and in my rebuttal report, the Accused Products do not infringe. It is further my opinion that the Footprint CDN functioned in substantially the same way as the Accused Products with respect to the claimed features of the Asserted Patents. Accordingly, since the Footprint CDN product practiced the same methods, it would not anticipate the Asserted Patents under a proper understanding of the claims. However, to the extent the Asserted Patents are infringed, the Footprint CDN product invalidates the patents under the same interpretation.

Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435 n.12 (emphasis added). Dr. Chase asserts that the Footprint CDN does not anticipate any asserted claim under "the proper constructions and proper understandings of the claim limitations," though he never specifies the "proper" constructions to which he refers. *See* Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435 n.12.

Dr. Chase does not provide any substantive analysis of how Webradio's use of the Footprint CDN allegedly meets any element of any of the asserted claims. Instead, Dr. Chase provided a bare-bones chart with no analysis or explanation by Dr. Chase, which only cites to and excerpts parts of documents and includes blanket citations to the entirety of two volumes of deposition testimony (totaling hundreds of pages) from one witness. *See* Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at 297-358. For example, Dr. Chase does not provide any analysis of how any aspect of Webradio's use of the Footprint CDN meets any element of, *e.g.*, claim 1 of the '213 patent, including claim terms that were construed by the Court. *See* Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at 297-332. The following excerpt—consisting entirely of a picture of a page of a document—typifies Dr. Chase's "analysis" of the Footprint CDN in his charts:

| '213 Patent | Footprint CDN |
|---|---|
| | Tr. Vol. II |
| | ## 1.5 Streaming Media Files |
| | The two basic types of streaming media are live content and pre-recorded content. Live content can be encoded and transmitted in real time; each client requesting a live event joins a webcast already in progress. If desired, live content can also be written to a file for later access by web site visitors. |
| | Pre-recorded content is recorded, digitized, and often edited before being encoded for streaming. Three types of files may be involved in streaming, or in the preparation for streaming: |
| | • Digital media files |
| | • Stream-ready media files |
| | • Pointer files — text files, served by web servers, which point to the streaming server and media to be streamed |
| | ### Pointer Files |
| | Pointer files are text files that contain links to media files. When these links are streaming control protocol links, web browsers receiving the files hand over communication to the appropriate media players, bringing about a transition from the use of one data communications protocol to another at end-user machines. A pointer file may be any of the following: |
| | • SMIL (Synchronized Multimedia Integration Language) is a standard pointer file used by RealSystem and QuickTime. A *SMIL file* is a text file (with a .smil extension) that typically contains a list of RTSP links to media files (though they may be PNA or HTTP links instead). |
| | SMIL's markup language provides for extensive control of media playback. For example, it allows transitioning where one clip starts before another one ends, and lets you specify the playback of only one portion of a clip. Other features include support for multiple bandwidths and the ability to customize multimedia presentations according to user preferences. |
| | • Ram (RealAudio Metafile) — A *Ram file* is a RealNetworks proprietary pointer file for streaming from a *RealServer* or a web server. |
| | When a browser receives a Ram file with a .ram extension, it launches *RealPlayer* which uses the Ram file's RTSP links to media files or SMIL files to request media from the indicated RealServer. |
| | When a browser receives a Ram file with a .rpm extension, it also launches RealPlayer which uses the Ram file's HTTP link(s) to media files or SMIL files contained in the Ram file to request streaming media from the web server. |
| | • ASX (ASF Stream Redirector) — An *ASX file* is a Microsoft proprietary pointer file (a text file with a .asx extension) that lists MMS links to ASF files in the order that they are to be streamed. |
| 1[b] | *See generally*, Newton Deposition Transcripts, Vol. I and Vol. II and Newton |

Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at 316.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party "is entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (internal quotation marks omitted). The moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

**B.    Anticipation**

A patent is presumed to be valid.  35 U.S.C. § 282.  A defendant must present clear and convincing evidence to overcome that presumption.  *Schumer*, 308 F.3d at 1315 (citation omitted).

Under the Patent Act, "[a] person shall be entitled to a patent unless . . . the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b) (2000). "Section 102(b) may bar patentability by anticipation if the device used in public includes every limitation of the later claimed invention . . . ."  *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002) (citations omitted).  A court may resolve the issue of anticipation on summary judgment if no genuine dispute of material fact exists. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1294 (Fed. Cir. 2002).

**C.    A Defendant Cannot Establish Invalidity Through Assertions That The Prior Art Is The Same As The Accused Products.**

The Federal Circuit has held that "anticipation cannot be proved by merely establishing that one 'practices the prior art.'"  *Zenith*, 522 F.3d at 1363; *see Tate Access*

*Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002) ("[A]ccused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing prior art' defense . . . ."). Rather, "[a]nticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith*, 522 F.3d at 1363. For this reason, "mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity." *Id.*

Many district courts have similarly rejected a defendant's attempt to prove invalidity through assertions that the prior art is the same as what is accused of infringement. *See, e.g.*, *Rivera v. Remington Designs, LLC*, No. LA CV16–04676 JAK (SSx), 2017 WL 3449615, at *5 (C.D. Cal. July 7, 2017) (denying summary judgment of anticipation where "Defendants' argument [was] premised on the 'practicing the prior art defense'" instead of "show[ing] that every element of the patent claims reads on a single prior art reference") (citation omitted); *Nextec Applications v. Brookwood Cos.*, 703 F. Supp. 2d 390, 422-25 (S.D.N.Y. 2010) (granting summary judgment of no anticipation, and rejecting defendant's argument that expert testimony that the accused products "are the same in all material respects to those practiced and disclosed in the prior art . . . is sufficient to establish the invalidity of the Asserted Claims if those claims are found to read on" the accused products); *Continental Auto. Sys. U.S., Inc. v. Schrader Elecs., Inc.*, No. 11-14525, 2012 WL 12930768, at *2-3 (E.D. Mich. Dec. 3, 2012) (denying summary judgment of anticipation when defendant sought "to establish anticipation by proving that its prior art—the Gen 2B sensors—are identical in all material respects to the allegedly infringing Gen 3 sensors"); *cf. Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6271807, at *3-4 (E.D. Tex. Nov. 29, 2018) (striking expert report and precluding trial testimony concerning prior art device where defendant's expert merely "opine[d] the prior art has features 'analogous'

to the features identified by" plaintiff's infringement expert); *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-cv-621-JRG-RSP, 2016 WL 7743510, at *2 (E.D. Tex. Sept. 21, 2016) (granting motion *in limine* and precluding defendant from "compar[ing] an accused product to the prior art [f]or purposes of establishing non-infringement or invalidity"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963, at *3 (E.D. Tex. July 12, 2016) (same).

### D.    Conclusory Expert Analysis Is Insufficient To Prove Invalidity.

In order to prove anticipation, a defendant must offer "testimony from one skilled in the art and must ***identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference***." *Schumer*, 308 F.3d at 1315 (emphasis added).  Expert testimony "is insufficient if it is merely conclusory" and such testimony cannot sustain a defendant's burden at the summary judgment stage. *Id.* at 1315-16.  The Federal Circuit has made clear that "it is not the task of the district court[] to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage.   Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper."  *Id.* at 1316; *see Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582, 585, 588 (Fed. Cir 2004) (reversing district court's finding of anticipation, and noting that a "chart comparing the [claimed] invention to [the claims]" along with "conclusory testimony of Concept's expert" were insufficient to prove anticipation); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("It is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact. [. . .] It is not the trial judge's burden to search through lengthy technologic documents for possible evidence.").

1   Claim charts that cite to materials but are devoid of any analysis or explanation

2   are insufficient.  *See, e.g.*, *Mettler-Toledo*, 2008 WL 11348468, at *4 ("The court has

3   nothing against claim charts, and believes them to be a concise way of summarizing an

4   expert's opinion.  However, as noted above, the court is not required to 'admit opinion

5   evidence that is connected to existing data only by the ipse dixit of the expert. . . . Here,

6   where the claim chart is the sum total of the expert's opinion and ***provides no analysis***

7   ***whatsoever beyond reference to the depositions and deposition exhibits of other***

8   ***individuals***, the gap between what [the expert] opines and the scanty content of his

9   report is too great.") (emphasis added); *STS Software Sys., Ltd. v. Witness Sys., Inc.*,

10   No. 1:04-CV-2111-RWS, 2008 WL 660325, at *2-3 (N.D. Ga. Mar. 6, 2008) (excluding

11   testimony regarding invalidity where [t]he opinions . . . consist[ed] of a summary of

12   prior art references, claim charts containing quotes excerpted from these references, and

13   a conclusion that a combination of references renders the patent claims obvious");

14   *Konvin Assocs. v. Extech/Exterior Techs.*, No. 04 C 2544, 2006 WL 2460589, at *5

15   (N.D. Ill. Aug. 21, 2006) (denying summary judgment of anticipation and finding

16   insufficient "a chart that recites each element of [the claim] and describes where the

17   element can be found in the prior art" paired with expert testimony that merely "states,

18   without elaboration, that certain of the above mentioned patents 'include[ ] all of the

19   limitations of [the claim]").

20   **IV.   ARGUMENT**

21   The Court should grant summary judgment of no anticipation of any asserted

22   claim of the '213, '796, and '074 patents for two reasons.  First, Dr. Chase's conclusory

23   assertions that the prior art meets the claims "under [Sound View's] interpretation" of

24   the claims because it "functioned in substantially the same way as the Accused

25   Products" is insufficient to meet Hulu's burden because it is legally irrelevant.  Second,

26   Dr. Chase's only attempt at "analysis" beyond that assertion is claim charts that consist

27   solely of citations to documents and testimony without explanation of how the cited

28

1   evidence meets each claim element.  Such conclusory "analysis" is insufficient to meet

2   Hulu's burden of proof by clear and convincing evidence.

3      **A.    Dr. Chase's "Analysis" Of The Footprint CDN Consists Only Of**

4      **Conclusory Assertions That The Footprint CDN Functions**

5      **"Substantially The Same Way" As The Accused Products, Followed**

6      **By A Claim Chart Consisting Only Of Citations And Document**

7      **Excerpts Without Explaining Exactly What In The Footprint CDN**

       **Meets Each Claim Element.**

8         In full, Dr. Chase's "analysis" of the Footprint CDN's alleged anticipation of the

9   asserted claims of the '213,'796, and '074 patents consists of two paragraphs followed

10  by 60 pages of charts (adopted from Hulu's invalidity contentions) that contain only

11  excerpts of documents and blanket citations to the entire deposition transcript (hundreds

12  of pages of testimony) of a fact witness.

13        First, Dr. Chase opines that the Footprint CDN anticipates the claims because it

14  functioned in "substantially the same way as the Accused Products."

> **XIII.   ANTICIPATION BY PRIOR USE AND OFFER FOR SALE BY SANDPIPER IN ITS FOOTPRINT CDN PRODUCT**
>
> 435.    In my opinion, to the extent that the Asserted Claims are infringed by the Accused
>
> Products, Sandpiper's Footprint CDN product in the late 1990s meets the claim limitations for
>
> the same reasons.[12]  I understand that Sandpiper Consulting and Sandpiper Networks designed
>
> * * *
>
> [12] I note that under the proper constructions and proper understandings of the claim limitations as discussed in this report and in my rebuttal report, the Accused Products do not infringe.  It is further my opinion that the Footprint CDN functioned in substantially the same way as the Accused Products with respect to the claimed features of the Asserted Patents. Accordingly, since the Footprint CDN product practiced the same methods, it would not anticipate the Asserted Patents under a proper understanding of the claims.  However, to the extent the Asserted Patents are infringed, the Footprint CDN  product invalidates the patents under the same interpretation.

26  Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435 & n.12 (emphasis added).  Next, Dr.

27  Chase introduces the claim charts by explaining "I have prepared the charts below to

28  reflect my understanding of how the Footprint CDN product functions in substantially

the same way as the Accused Products, with respect to the Asserted Claims." *Id.* at ¶ 436. The claim charts themselves—for an example of the content of the charts, *see* Section II above—corroborate that stated purpose, as opposed to evidence an attempt to explain what specific components of the Footprint CDN meet each claim element under the ordered claim constructions, as the charts ***do not analyze any portion of the claim language, provide any explanation of any excerpts of documentation, or discuss any of the Court's claim constructions***.[1] *See generally* Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at 296-358; Ginnings Decl., Ex. 5 (Chase Dep. Tr.) 201:9-25 (Dr. Chase conceding that he "did not write any of that text" in the claim chart). Indeed, the charts contained in Dr. Chase's report concerning the Footprint CDN are ***identical to Hulu's final invalidity contentions***, and contain no discussion or language of any kind from Dr. Chase. *Compare* Ginnings Decl., Ex. 6 (Hulu Final Invalidity Contentions, '213 patent claim chart for Footprint CDN) at 1-51 *with id.*, Ex. 1 (Chase Opening Rpt.) at 297-332.[2]

**B.  Hulu's And Dr. Chase's Footprint CDN Theory Fails Because The Mere Assertion That The Footprint CDN Functioned In "Substantially The Same Way As The Accused Products" Is Insufficient To Prove Anticipation As A Matter Of Law.**

Dr. Chase's conclusion that the Footprint CDN meets the asserted claims "under [Sound View's] interpretation" of the claims in that it "functioned in substantially the

---

[1] Hulu served Dr. Chase's opening report before the Court issued its claim construction order. While other portions of Dr. Chase's invalidity report discuss the parties' proposed constructions (and the Court's tentative constructions), the sections of his invalidity report concerning the Footprint CDN contain no such discussion. *Compare* Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at ¶¶ 95-98 *with id.* at pp. 297-358.

[2] In fact, Hulu's invalidity contentions and Dr. Chase's report even contain the same typographical error, repeatedly referring to a document (LEVEL3-001359) by the wrong production number (LEVEL3-0012359). *Compare, e.g.*, Ginnings Decl. Ex. 1 (Chase Opening Rpt.) at 303 *with, e.g., id.*, Ex. 6 (Hulu Final Invalidity Contentions, '213 patent claim chart for Footprint CDN) at 14. *See also* Dkt. No. 160-2, ¶ 8 & n.1.

same way as the Accused Products" is insufficient to prove anticipation as a matter of law because a proper showing of anticipation requires that a defendant compare the prior art to the **claims** (as construed).  *See, e.g.*, *Zenith*, 522 F.3d at 1363 ("[I]t is the presence of the prior art and its relationship to the claim language that matters for invalidity").  Because Dr. Chase has merely provided a conclusory assertion that the Footprint CDN functioned in "substantially the same way" as Hulu's accused platforms, Dr. Chase's Footprint CDN theory fails as a matter of law.[3]

In *Zenith*, the Federal Circuit vacated the district court's grant of summary judgment of anticipation by a prior art device.  *See Zenith*, 522 F.3d at 1362-64.  In reaching that conclusion, the Federal Circuit rejected as insufficient the defendant's assertion that two claim limitations were met by the prior art device "to the extent the [accused product] is considered to practice them," and noted that "[a]nticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference."  *Id.* at 1363.  In other words, where a defendant makes such assertions, it may not rely on such assertions as a **substitute** for an element-by-element analysis comparing the prior art to the claims and explaining how each claim element is met.  *See 01 Communique Laboratory, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742-43 (Fed. Cir. 2018).

This Court and others have similarly found such conclusory comparisons between accused products and the prior art to be insufficient to prove invalidity.  For example, in *Rivera*, this Court denied the defendant's motion for summary judgment of anticipation, finding that "[t]he proper framework for challenging the validity of a patent is not for the accused to show that it is practicing the prior art, but to show that

---

[3]  Moreover, Dr. Chase's vague assertion that the prior art is "substantially" the same as the accused products falls short of even the circumstances that that the Federal Circuit has held constitute legally insufficient proof of invalidity.  In those instances, the Federal Circuit held that "proof that the prior art is **identical, in all material respects**, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity."  *Zenith*, 522 F.3d at 1363-64 (emphasis added).

every element of the patent claims reads on a single prior art reference."  2017 WL 3449615, at *5.  Similarly, in *Nextec*, the district court granted summary judgment of no anticipation, and rejected the defendant's argument that expert testimony that the accused products "are the same in all material respects to those practiced and disclosed in the prior art . . . is sufficient to establish the invalidity of the Asserted Claims if those claims are found to read on" the accused products.  703 F. Supp. 2d at 422-25.

Dr. Chase's Footprint CDN theory is precisely the type of invalidity theory that the Federal Circuit rejected in *Zenith*, and that this Court and others have rejected.  Simply put, Dr. Chase did not "show[] that each element of the claim at issue, properly construed, is found in a single prior art reference."  *Zenith*, 522 F.3d at 1353.  Instead, as explained below, the claim charts that Dr. Chase provided in his report are simply a compendium of excerpts of Footprint-related documents and general citations to the entirety of Mr. Newton's testimony, without any showing or explanation of how any of that material demonstrates that each (much less every) claim element is present in the Footprint CDN.  *See* Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at 296-358.[4]

_____

[4] In contrast, certain courts have permitted defendants' experts to assert invalidity theories based on the plaintiff's expert's interpretation of claim scope, but only where (unlike Dr. Chase) the defendant's expert in fact provides an analysis of how the prior art meets each element of the claims under a particular claim scope.  *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 943 (N.D. Cal. 2015) (denying plaintiff's *Daubert* motion as to an anticipation theory where defendant's expert "d[id] not dodge the claim language," but instead "assume[d] that Icon's understanding of the construed claims is correct, and then proceed[ed] to demonstrate how, in his opinion, each element of the claims is found in the prior art"); *01 Communique*, 889 F.3d at 743 (declining to find that defendant presented "an improper 'practicing the prior art' defense" where defendant explained which feature would cause the prior art to meet the claims).

**C.    Dr. Chase's Claim Chart Consisting Solely Of Excerpts Of Documents And Citations To An Entire Deposition Transcript Is Insufficient To Meet Hulu's Burden Of Proof.**

Dr. Chase's bare-bones analysis of the Footprint CDN—which consists solely of naked citations to documentation and testimony, with no explanation of how cited evidence meets each claim element—is insufficient to meet Hulu's burden to prove invalidity by clear and convincing evidence.  The Federal Circuit has explained that, in order to prove anticipation, a defendant must offer "testimony from one skilled in the art and must identify each claim element, *state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference*."  *Schumer*, 308 F.3d at 1315; *cf. Aspex*, 111 F. App'x at 585, 588 (reversing district court's grant of summary judgment of anticipation, finding a "chart comparing the [claimed] invention to [the claims]" along with "conclusory testimony of [the defendant's] expert" insufficient to prove anticipation).

Claim charts with no analysis or explanation of what exactly in the prior art meets each claim element—such as what Dr. Chase provided in this case—fall short of that standard.  The following representative image from Dr. Chase's charts illustrates the lack of analysis or explanation.  In the following image taken from the section of the chart regarding element 16[c] of '213 patent claim 16, Dr. Chase invites the reader to review a 47-page Footprint document (a portion of which is excerpted on the page), "Newton Deposition Transcripts, Vol. I and Vol. II" (which total hundreds of pages), and the "discussion of Ex. 40 in Newton Dep. Tr. Vol II."

| 16[c] downloading said portion of said requested SM object to said requesting client, while concurrently retrieving a remaining portion of said requested SM object from one of another HS and said content server; and | *See generally*, Newton Deposition Transcripts, Vol. I and Vol. II and Newton Declaration.<br><br>*See, e.g.*, LEVEL3-001458-504. *See also* discussion of Ex. 40 in Newton Dep. Tr. Vol. II<br><br>**Streaming Control Protocols**<br><br>An end user's click on a web page multimedia hyperlink causes the user's browser to request a pointer file — a text file containing one or more links to streaming content. The links in a pointer file may specify a streaming control protocol or HTTP.<br><br>When a media player receives a pointer file containing streaming control protocol links, it uses the indicated streaming control protocol to request the first media item listed in the pointer file, thereby initiating a control session for the media stream.<br><br>Streaming control sessions typically consist of a streaming control protocol running over TCP. When a streaming server responds affirmatively to a media player request, the server initiates a media stream to the media player in addition to responding over the control channel. During playback, the player provides feedback to the streaming server over the control channel so that the server can optimize delivery of the media stream. Examples of streaming control protocols are:<br><br>- *RTSP* (Real-Time Streaming Protocol) used by RealSystem and Apple QuickTime to set up streaming control connections<br>- *PNA* (Progressive Networks Audio), a legacy streaming control protocol supported by RealSystem<br>- *MMS* (Microsoft Media Server), the Windows Media streaming control protocol<br><br>**Real-Time Streaming Protocols**<br><br>Real-time streaming protocols deliver streams of encoded media packets from streaming servers to destination players. RealSystem and Apple QuickTime use the Internet standard *RTP* (Real-time Transport Protocol) to stream media across the network. RealSystem also uses a RealNetworks proprietary |

Ginnings Decl., Ex. 1 (Chase Opening Rpt.) at 335.  Dr. Chase conceded at his deposition that he "did not write any of that text" in the claim chart—*i.e.*, did not provide any of his own explanation or analysis.  Ginnings Decl., Ex. 5 (Chase Dep. Tr.) 201:9-25.  Indeed, the chart is simply from Hulu's invalidity contentions.  According to Dr. Chase, "[t]he intent of putting this material in here was to make it clear what material and citations [he] might use to put forward opinions relating to the Footprint CDN as a prior art reference."  *Id.* at 200:2-18.

Instead, Dr. Chase left it to the reader to interpret or guess what Dr. Chase actually contends is the specific part of the Footprint CDN that meets the claim element. Dr. Chase explained at his deposition that Sound View's expert, Dr. Richardson, should figure out what Dr. Chase believed met each claim element despite the fact that ***Hulu bears the burden to prove invalidity***.

| | |
|---|---|
| 15      Q      You do not map particular<br>16  segment -- a particular excerpt to a helper<br>17  server; correct?<br>18          MR. WILLIAMSON: Objection. Asked<br>19  and answered, and the expert report speaks<br>20  for itself.<br>21          THE WITNESS: Well, as I said, I<br>22  think it would be clear to your expert<br>23  from the citations for, for example, the<br>24  claim 1 preamble what the mapping for<br>25  helper server is in this prior art.<br>1  BY MS. PRZYBYLSKI:<br>2      Q      You do not provide any specific<br>3  direction to identify what a helper server is<br>4  in the Footprint CDN; correct?<br>5          MR. WILLIAMSON: Objection. The<br>6  expert report speaks for itself.<br>7          THE WITNESS: It is certainly true<br>8  that I was not able to be as helpful to<br>9  your expert as I would have liked to be. | 12      Q      You yourself cannot point to a<br>13  disclosure in the Footprint CDN that<br>14  references ring buffer; correct?<br>15          MR. WILLIAMSON: Objection. Asked<br>16  and answered twice.<br>17          THE WITNESS: I believe it would be<br>18  clear to your expert from the cited<br>19  portions in the claim charts here that his<br>20  analysis of a ring buffer in the accused<br>21  edge servers would also apply to the<br>22  Footprint CDN. |

Ginnings Decl., Ex. 5 (Chase Dep. Tr.) 202:15-203:9, 205:12-22 (emphasis added). Nor can any dispute exist that Dr. Chase's charts fail to provide such analysis or explanation—indeed, the express purpose of the charts according to Dr. Chase is "to reflect [his] understanding of how the Footprint CDN product functions in substantially the same way *as the Accused Products*."  Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435 (emphasis added).

Courts have found such charts insufficient.  For example, in *Mettler-Toledo*, a defendant moved to exclude the plaintiff's infringement expert's testimony.  2008 WL 11348468, at *4.  The court concluded that the expert's "conclusions are beyond succinct and consist entirely of a series of claim charts with unhelpful and unenlightening 'analysis' such as a certain claim limitation is met because of 'Exhibit 1 deposition of Stefano Rinaldi.'"  *Id.*  The court also noted that "[s]ometimes [the expert] specifies a page or line number, and sometimes he does not," and that "*[n]owhere does he connect the dots between the exhibit or deposition extract he points to and his conclusions*."  *Id.* (emphasis added).  The court thus granted the motion, noting that "where the claim chart is the sum total of the expert's opinion and *provides no analysis whatsoever beyond reference to the depositions and deposition*

1  *exhibits of other individuals*, the gap between what [the expert] opines and the scanty

2  content of his report is too great." *Id.* (emphasis added).

3        Similarly, in *STS Software*, the plaintiff moved to exclude the defendant's

4  expert's testimony concerning obviousness.  2008 WL 660325, at *2.  The court found

5  that the defendant's expert's analysis in his report "consist[ed] of a summary of prior

6  art references, claim charts containing quotes excerpted from the[] references, and a

7  conclusion that a combination of references renders the patent claims obvious."  *Id.*  The

8  court granted the motion, finding that "[n]o reason or basis is offered in the initial

9  reports for the conclusion of obviousness."  *Id.* at *2-3.[5]

10        Dr. Chase's "analysis" of the Footprint CDN is the type of conclusory analysis

11  that the courts excluded in *Mettler-Toledo* and *STS Software*.  As discussed and shown

12  above, his claim charts merely cite to portions of documents and provide general

13  references to the entirety of Mr. Newton's deposition testimony.  Just like the

14  conclusory analysis the court struck in *Mettler-Toledo*, nowhere does Dr. Chase

15  "connect the dots between the exhibit or deposition extract he points to and his

16  conclusions."  2008 WL 11348468, at *4.  And while Dr. Chase states his ***conclusions***

17  regarding the Footprint CDN (*i.e.*, that he believes the Footprint CDN "functioned in

18  substantially the same way as the Accused Products" and that "to the extent the Asserted

19  Patents are infringed, the Footprint CDN product invalidates the patents under the same

20  interpretation") (Ginnings Decl., Ex. 1 (Chase Opening Rpt.), ¶ 435 & n.12), Dr. Chase

---

21  [5] Other district courts have reached similar decisions.  *See, e.g.*, *Milos Misha Subotincic*

22  *v. 1274274 Ontario Inc.*, No. SACV 10-01946 AG (PJWx), 2013 WL 3964994, at *13

23  (C.D. Cal. Apr. 9, 2013) (excluding plaintiff's expert's testimony on infringement

24  where expert's report included "no analysis, discussion, or evidence regarding" the

25  claim language and the operation of the accused product, but instead "merely

26  contain[ed] a chart where a picture is inserted next to the limitations"); *Konvin*, 2006

27  WL 2460589, at *5 (denying summary judgment of anticipation and finding insufficient

28  "a chart that recites each element of [the claim] and describes where the element can be

found in the prior art" paired with expert testimony that "states, without elaboration,

that certain of the above mentioned patents 'include[ ] all of the limitations of [the

claim]'").

1  provides "[n]o reason or basis" for that conclusion.  *STS Software*, 2008 WL 660325,
2  at \*2.

3         The Federal Circuit has made clear that a defendant's burden to prove
4  anticipation by clear and convincing evidence applies even at the summary judgment
5  stage, and that as a result, defendants' experts are required to provide detailed analyses
6  in order to avoid summary judgment of no invalidity.  *See, e.g.*, *Schumer*, 308 F.3d at
7  1315 (requiring that expert's anticipation analysis "identify each claim element, state
8  the witnesses' interpretation of the claim element, and explain in detail how each claim
9  element is disclosed in the prior art reference") (emphasis added); *Aspex*, 111 F. App'x
10  at 588; *Biotec*, 249 F.3d at 1353.    Dr. Chase's analysis is insufficient to carry Hulu's
11  burden of proof by clear and convincing evidence, and summary judgment of no
12  anticipation by the Footprint CDN is appropriate.  *See, e.g.*, *Schumer*, 308 F.3d at 1315-
13  16; *Mettler-Toledo*, 2008 WL 11348468, at \*4; *STS Software*, 2008 WL 660325, at \*2-
14  3; *Konvin*, 2006 WL 2460589, at \*5.

15  **V.      CONCLUSION**

16         Sound View respectfully requests that the Court grant summary judgment of no
17  anticipation of the '213, '796, and '074 patents by the Footprint CDN.

18
19
20
21
22
23
24
25
26
27
28

Dated: March 4, 2019

By:      _/s/ Kent N. Shum_
          Marc A. Fenster
          Benjamin T. Wang
          Kent N. Shum
          12424 Wilshire Boulevard, 12th Floor
          Los Angeles, California 90025
          Tel: (310) 826-7474
          Fax: (310) 826-6991
          mfenster@raklaw.com
          bwang@raklaw.com
          kshum@raklaw.com

          _Of Counsel:_

          DESMARAIS LLP
          Alan S. Kellman (admitted _pro hac vice_)
          Richard M. Cowell (admitted _pro hac vice_)
          C. Austin Ginnings (admitted _pro hac vice_)
          Jennifer M. Przybylski (admitted _pro hac vice_)
          230 Park Avenue
          New York, NY 10169
          Tel: (212) 351-3400
          Fax: (212) 351-3401
          akellman@desmaraisllp.com
          rcowell@desmaraisllp.com
          aginnings@desmaraisllp.com
          jprzybylski@desmaraisllp.com

          Peter C. Magic (SBN 278917)
          pmagic@desmaraisllp.com
          101 California Street
          San Francisco, CA 94111
          Tel: (415) 573-1900
          Fax: (415) 573-1901

          _Attorneys for Plaintiff_
          _Sound View Innovations, LLC_

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule 5-3.2.  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule 5-3.2, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on March 4, 2019.

*/s/ Kent N. Shum*