UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) REDACTED ORDER RE (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 6,708,213, 6,757,796, AND 9,462,074 (DKT. 255, 268) AND (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO NO DIRECT INFRINGEMENT AND PARTIAL SUMMARY JUDGMENT OF LIMITED INDUCED INFRINGEMENT OF U.S. PATENT NOS. 6,708,213, 6,757,796, AND 9,462,074 (DKT. 253)**

## I.       Introduction

Sound View Innovations, LLC ("Plaintiff") brought this action against Hulu, LLC ("Defendant"). Complaint, Dkt. 1. Plaintiff alleges that Defendant has infringed certain claims of four patents. *See* Dkt. 441 (Order Granting Joint Stipulation to Dismiss Certain Claims); Dkt. 442 (Joint Notice of Issues in Pending Motions Rendered Moot by Order Granting Joint Stipulation); Dkt. 443 (most recent Joint Status Report Regarding *Inter Partes* Review Proceedings for patent for which district court litigation is currently stayed). The remaining pending disputes in this matter include claims, affirmative defenses, and counterclaims regarding infringement and invalidity of Claim 16 of U.S. Patent No. 6,708,213 ("the '213 Patent") and Claims 3 and 9 of U.S. Patent No. 9,462,074 ("the '074 Patent") based on Defendant's Streaming Video on Demand ("SVOD") product. This Order addresses two matters: (i) Defendant's Motion for Summary Judgment of Non-Infringement of the '213 and '074 Patents ("Non-infringement Motion," Dkt. 255, 268) and (ii) Defendant's Motion for Summary Judgment of No Direct Infringement and Partial Summary Judgment of Limited Induced Infringement of the '213 and '074 Patents.[1] "Divided Infringement Motion," Dkt. 253.

For the reasons stated in this Order, Defendant's Motion for Summary Judgment of Non-Infringement of

---

[1] The motions originally also sought determinations as to asserted claims of U.S. Patent No. 6,757,796 ("the '796 Patent") and other accused products. Thereafter, the parties filed a Joint Stipulation to Dismiss Certain Claims, including those with respect to the '796 Patent and the accused products other than Defendant's SVOD product. That Joint Stipulation was approved and a corresponding order entered. Dkt. 441. Therefore, disputes as to those matters are **MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

U.S. Patent Nos. 6,708,213, 6,757,796, and 9,462,074 (Dkt. 255, 268) is **GRANTED-IN-PART and DENIED-IN-PART**. It is **GRANTED** with respect to infringement of Claims 3 and 9 of the '074 Patent by the portions of Defendant's accused system that rely on ▮▮▮▮ proxy servers. It is **DENIED** in all other respects.[3] Defendant's Motion for Summary Judgment as to No Direct Infringement and Partial Summary Judgment of Limited Induced Infringement of U.S. Patent Nos. 6,708,213, 6,757,796, and 9,462,074 (Dkt. 253) is **DENIED**.

## II.     Background

### A.     Relevant Asserted Patents

The '213 and '074 Patents are described in the Order on Defendant's Motion to Dismiss pursuant to 35 U.S.C. § 101 (Dkt. 83) and the Claim Construction Order (Dkt. 148). That discussion is incorporated by this reference. The '213 and '074 Patents do not share a common specification or parent application. However, they do share portions of the same written description and use similar figures. The two patents relate to using "helper servers" in a network to stream multimedia content from a content provider to a client.

The '213 Patent is titled "Method for Streaming Multimedia Information over Public Networks." It generally discloses and claims "methods which improve the caching of streaming multimedia data (e.g., audio and video data) from a content provider over a network to a client's computer." '213 Patent at 1:10–15. The '213 Patent describes, for example, using "ring buffers" to cache data at helper servers and to "implement several methods specifically designed to support streaming media, including proxy caching, client request aggregation . . . and data transfer rate control to reduce start-up latency." *Id.* at 2:64–3:5; *see also id.* at 4:41–62, 5:55–65, 8:3–8.

As stated, Claim 16 is the only remaining asserted claim of the '213 Patent. Dkt. 441. Claim 16 recites:

> 16.     A method of reducing latency in a network having a content server which hosts streaming media (SM) objects which comprise a plurality of time-ordered segments for distribution over said network through a plurality of helpers (HSs) to a plurality of clients, said method comprising:
> receiving a request for an SM object from one of said plurality of clients at one of said plurality of helper servers;
> allocating a buffer at one of said plurality of HSs to cache at least a portion of said requested SM object;
> downloading said portion of said requested SM object to said requesting client,

---

[2] ▮▮▮▮

[3] Eight other motions remain pending, which are not addressed in this Order. This Order is issued in light of the recent Joint Report by the parties (Dkt. 447), and based on the understanding that a determination of some of the outstanding motions may facilitate the settlement process in which the parties are engaged.

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

    while concurrently retrieving a remaining portion of said requested SM object from one of another HS and said content server; and
  adjusting a data transfer rate at said one of said plurality of HSs for transferring data from said one of said plurality of helper servers to said one of said plurality of clients.

'213 Patent, Claim 16.

The '074 Patent is titled "Method and System for Caching Streaming Multimedia on the Internet." The '074 Patent generally discloses methods "designed to support streaming multimedia, including segmentation of streaming multimedia objects (SM objects) into smaller units (i.e., chunks), cooperation of the [helper servers], and novel cache placement and replacement policies of the constituent units (chunks) which make up the SM objects." '074 Patent at 3:2–6. The '074 Patent describes using these methods to manage the disk space on the helper servers, and to decrease latency for streaming content. *See id.* at 3:6–12, 4:46–61, 12:40–63.

As stated, Claims 3 and 9 are the only remaining asserted claims of the '074 Patent. Dkt. 441. Claim 3 recites:

  3. A method for storing a streaming media (SM) object in a network having a content server which hosts SM objects for distribution over said network through a plurality of helper servers (HSs) to a plurality of clients, said SM object being comprised of a plurality of successive time-ordered chunks, wherein a chunk is further comprised of a discrete number of segments, each segment allocated to a respective disk block of said plurality of HSs, said method comprising:
    i) receiving said SM object;
    ii) determining whether there is a disk space available on said one of said plurality of HSs;
    iii) storing said SM object at said at least one HS if it is determined that there is sufficient disk space available; and
    iv) performing the following steps, if it is determined that there is insufficient disk space available:
      a) composing a set of SM objects from among a plurality of SM objects stored on said disk space whose access time is determined to be least recent, where said access time corresponds to a time when said SM object was last requested; and
      b) replacing a portion of each of said SM objects belonging to said composed set with chunks of said received SM object.

'074 Patent, Claim 3.

A Certificate of Correction was filed in the '074 Patent. It revised the words of Claim 9. The uncorrected version of Claim 9 recites:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

> 9. A method for managing storage of a streaming media (SM) object in a network having a content server which hosts SM objects for distribution over said network through a plurality of servers to a plurality of clients, said method comprising:
> 
>     i) receiving said SM object;
> 
>     ii) determining whether there is a disk space available on one of said plurality of servers;
> 
>     iii) storing said SM object at said at least one HS if it is determined that there is sufficient disk space available; and
> 
>     iv) if it is determined that there is insufficient disk space available to store the received SM object, for each of a plurality of SM objects stored in said disk space, deleting only a portion of said SM object, whereby the deletion of said portions of said SM objects results in sufficient disk space being available for storage of the received SM object.

'074 Patent, Claim 9 (uncorrected). The corrected version of Claim 9 changes the phrase "said at least one HS" in step (iii) to "said one of said plurality of servers." *See id.* at Certificate of Correction.

During the claim construction process, certain portions of the '213 and '074 Patents were considered. Dkt. 148. The following claim constructions were then adopted:

| Term | Court's Construction |
|---|---|
| "helper server"/ "helper"/ "HS" ('213 Patent, Claims 1, 7, 13–16; '796 Patent, Claims 1–3, 5–7, 13–15, 18, 20, 21, 24, 25, 27, 29; and '074 Patent, Claims 3, 9) | "one of a plurality of servers in the network that provide certain value-added services and selectively cooperate and communicate SM objects (or segments of such objects) between and among each other and between content servers and clients" |
| "streaming multimedia object(s)"/ "streaming media object(s)"/ "SM object" ('213 Patent, Claims 1, 8, 13, 15, 16; '074 Patent, Claims 3, 9) | "a multimedia data file whose transmission has temporal characteristics such that the data may become useless unless the transmission rate is regulated in accordance with predetermined criteria (e.g., audio and video files)." |
| "adjusting a data transfer rate at said one of said plurality of HSs" ('213 Patent, Claim 16) | No construction. |

*Id.* at 26-27; *see also id.* at 9–11, 13–17.

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

    **B.**    **Accused Product**

Plaintiff argues that Defendant's SVOD product infringes the asserted claims of the '213 and '074 Patents. The SVOD product allows client computers to request and stream media files. The parties do not have material disputes as to any of the following facts about the operation of Defendant's SVOD product:



**III.**    <u>Analysis</u>

    **A.**    **Legal Standards**

        1.    <u>Summary Judgment</u>

Summary judgment is appropriate when, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," such as those necessary to the proof of a defense or a claim, and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

"Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks omitted). If the non-moving party fails to produce evidence sufficient to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322–23.

Mere allegations or denials do not defeat a moving party's allegations. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 959–60 (9th Cir. 1994). The nonmoving party cannot defeat a motion for summary judgment simply by proffering a conclusory opinion from an expert. *See, e.g.*, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact to defeat summary judgment."); *Arthur A Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1047–48 (Fed. Cir. 2000).

    2.  <u>Patent Infringement</u>

A determination of patent infringement requires a two-step analysis. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The first step is to construe the claims; *i.e.*, to determine the scope and meaning of what in the patent is allegedly infringed. *Id.* This step is a question of law. *Id.* at 970–71. Here, certain claim terms were construed in the Claim Construction Order. *See* Dkt. 148. The second step in the analysis is to compare the properly construed claims to the accused products or processes to determine whether each of the claim limitations is met, either literally or under the doctrine of equivalents. *Markman*, 52 F.3d at 976; *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002); *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1173 (Fed. Cir. 1993) (although no literal infringement of a claim, an accused device may still infringe under the doctrine of equivalents.). This determination is a question of fact. *Bai v. L & L Wings Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998); *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207 (Fed. Cir. 2001).

The patentee bears the burden of proving, by a preponderance of the evidence, that each accused product or process practices each limitation of the asserted claims. *Bayer AG v. Elan Pharma. Res. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994). The absence of one claim element establishes non-infringement and makes immaterial whether there are any remaining issues of fact. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

"Since the ultimate burden of proving infringement rests with the patentee," an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). If the moving party meets this initial burden, the burden shifts to the party asserting infringement to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing there is a genuine issue for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

trial." *Anderson,* 477 U.S. at 248; *accord Novartis*, 271 F.3d at 1046. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 325.

    **B.**    **Application**

        1.    <u>Non-Infringement Motion</u>

Defendant seeks summary judgment of non-infringement of the remaining asserted claims of the '213 and '074 Patents. Defendant argues that summary judgment is appropriate because the parties agree on the operation of the accused products, but disagree on the legal interpretation of the claims.

Defendant identifies two disputes in its reply brief, and made additional arguments in its opening brief. *First*, Defendant argues that the parties dispute the meaning of the term "SM object" as it is used in the remaining asserted claims. Claim 16 of the '213 Patent requires "receiving a request for an SM object from one of said plurality of clients at one of said plurality of helper servers." '213 Patent, Claim 16. Defendant argues that under the proper construction of "SM object," this limitation of Claim 16 cannot be met. *See* Dkt. 415-2 at 3. Claims 3 and 9 of the '074 Patent include similar limitations as to "SM objects," and Defendant argues that they are not infringed by the accused product.

*Second*, Defendant argues that the parties dispute whether the claim limitations in Claims 3 and 9 of the '074 Patent must be performed in a particular order. The claim limitations of Claims 3 and 9 include a roman numeral before each listed limitation. Defendant argues that the specific order of steps recited in the claims is not met by the accused product and that the later steps of the claims must be performed "in response to" performance of an earlier claim step. *Id.*

Defendant also advances a non-infringement argument regarding the claim limitation "adjust a data transfer rate at a helper server" in Claim 16 of the '213 Patent. Dkt. 272-3 at 18. Defendant argues that the accused product does not meet this limitation because, ████████████████████████████
████████████████████████████

           a)    <u>Claim 16 of the '213 Patent</u>

               (1)    <u>"SM object"</u>

The Claim Construction Order addressed the parties' dispute regarding the meaning of the term "SM object." Dkt. 148 at 14–17. This discussion addressed whether a construction of the term "SM object" should include the requirement that an SM object be "an entire media file." *Id.* at 15. The Claim Construction Order concluded:

> Defendant's proposal that an SM object must constitute an "entire media file," and its accompanying argument that 15 minutes of a movie would not meet its proposed construction, are potentially inconsistent with this disclosure. Applying Defendant's logic, a "top news story" likely would not meet Defendant's proposed construction unless the file

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

    included the full, hour-long news broadcast. There is insufficient disclosure in the specification to support construing "SM object" to limit it to require Defendant's proposed "entire media file" limitation as that limitation seemingly has been argued by Defendant.

    To the extent Defendant's argument acknowledges that an "entire media file" could be a "top news story" or a movie clip, it has more merit. The patent specifications do emphasize that SM objects are generally large "and therefore, do not lend themselves to be cached in their entirety." See, e.g., '074 Patent at [2:]51– 52 (emphasis added). Taking a media file like a "top news story" and dividing it before applying the steps of the claims would be inconsistent with the disclosure in the patent. As Defendant notes, "breaking video objects into smaller pieces and treating each portion of the 'data' as an individual 'SM object'" would go against the purported goals of the invention and other statements in the specification. See Dkt. 72 at 15.

    \*             \*             \*

    Although the specifications broadly refer to "objects" rather than "files," they consistently refer to the goals of the disclosed invention. These include aiding in storing and transmitting those objects based on difficulties presented by their large data size that "do not lend themselves to be cached in their entirety." See, e.g., '074 Patent at [2:]51–52 (emphasis added). Plaintiff does not argue that an "object" is something other than a file or a portion of a file. Indeed the patent disclosure shows that an "object" must be an entire file, not a portion. However, Defendant's contention that "file" must necessarily be an entire movie rather than a movie clip, if accepted and applied, would unduly limit the scope of the term. Much of the multimedia content on the Internet is small excerpts from larger films or television shows. The key issue is whether a particular file -- whether an entire movie or clip of a portion of it -- is manipulated or divided by a content server or helper server prior to the commencement of the requisite steps stated in each of the claims.

*Id.* at 16–17.

Based on these statements in the Claim Construction Order, Defendant argues that the limitation in Claim 16 as to "receiving a request for an SM object from one of said plurality of clients at one of said plurality of helper servers" cannot be met by the accused product. In essence, Defendant contends that this claim limitation must be interpreted as requiring a *single* request for an *entire* SM object from one of said plurality of clients at one of said plurality of helper servers. Defendant argues that, because the client computer in the accused product system sends *multiple* requests for *portions* of an SM object, this claim limitation cannot be met.

During claim construction, the parties did not request construction of the entire phrase "receiving a request for an SM object from one of said plurality of clients at one of said plurality of helper servers." Defendant's interpretation of this claim phrase would require that "a request" be limited to a single request. However, in the interpretation of patents, it is understood that "a" or "the" in a patent claim generally refers to "one or more." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

(Fed. Cir. 2008). Defendant has provided insufficient evidence from the intrinsic record to support why this general "rule" does not apply here. *See id.* at 1342 ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must evince a clear intent to limit 'a' or 'an' to 'one.'" (some internal quotations omitted)).

At the hearing, Plaintiff also cited portions of the '213 Patent specification to support its interpretation of "receiving a request for an SM object" as not limited to requests for an *entire* SM object. In one passage, the specification states:

> [r]equests for SM objects are heterogenous in nature. In particular, heterogeneity can appear in . . . range heterogeneity . . . . [R]ange heterogeneity describes that each request from a client **26–40** for a SM object has an associated requested playback range (i.e., a starting and ending time). Typically, the starting time for an SM object is the beginning of the SM object. However, a request may be received with starting times other than the beginning of an object.

'213 Patent at 6:4–17; *see also id.* at 4:9–15 ("Streaming multimedia object (SM object): . . . Transmission can start at any point within the object and can be terminated by the receiver at any time.").

Elsewhere, the '213 Patent states:

> Each buffer contains data to service a client request for an SM object having a specified time range (i.e., starting time, ending time) . . . . At any instant, there could exist multiple buffers in the buffer pool containing data for the same SM object, where each buffer corresponds to a different specified time range in response to randomly received requests from multiple clients in the network.

*Id.* at 10:56–65.

These passages support the conclusion that the overall claim phrase "receiving a request for an SM object" cannot be limited to receiving a single request for an entire SM object. Therefore, the parties' dispute regarding whether the accused product satisfies the requirement in Claim 16 of "receiving a request for an SM object" presents a question of fact. Plaintiff has submitted evidence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Under these circumstances and under an interpretation of the claims that is not as limited as that advanced by Defendant, summary judgment is not warranted as to this dispute over the limitations of Claim 16 of the '213 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

(2) "adjust a data transfer rate at a helper server"

Defendant next argues that the accused system does not meet the limitation of Claim 16 as to "adjust[ing] a data transfer rate at a helper server." ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ *Id.*

Defendant argues that ▊▊▊ is a type of "quality adaptation" that relates to ▊▊▊▊▊▊▊▊▊▊▊▊ ▊▊, not the data transfer rate at which data is sent to the client. Dkt. 272-3 at 19. Defendant also argues that, during prosecution of the '796 Patent, the patent applicant distinguished "quality adaptation schemes" from changes in the "data rate." *Id.* at 19–20. Defendant then argues that the accused system does not adjust the data transfer rate "at said one of said plurality of HSs" because the client computer makes the request for a particular ▊▊▊▊▊▊▊▊▊. Finally, Defendant argues that Claim 16 requires that the data transfer rate is adjusted to reduce latency, and that the accused system's ▊▊▊▊▊▊▊▊ does not do so.

Plaintiff has presented responsive evidence to support the argument that ▊▊▊▊▊▊▊▊▊ and "quality adaptation" are unrelated processes that are performed differently. Dkt. 428-1 at 15. Plaintiff argues that ▊▊▊▊▊▊▊▊▊▊▊ satisfies the claim language because when ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊▊▊. *Id.* Plaintiff argues that there is no requirement in the claims that the helper server control the data transfer rate adjustment. *Id.* at 16 (citing Claim Construction Order, Dkt. 148 at 10). Plaintiff also argues that there is no requirement that adjusting the data transfer rate be performed for the purpose of reducing startup delay. *Id.* at 17–18. Plaintiff then contends that, even if the claims require adjusting the data transfer rate to reduce startup delay, the evidence supports the conclusion that the accused system does so. *Id.* at 18 ("one point of ▊▊▊ is to allow for video data to reach the client device in a timely manner notwithstanding deterioration in network conditions.").

The parties have presented disputes about both the scope of the claims, and certain questions of material fact. As to claim scope, the evidence presented both during claim construction and in connection with the motion for summary judgment, and the procedural history of this action, supports the following determinations: (i) the patent applicant disclaimed "quality adaptation" during prosecution of a patent similar to the '213 Patent; (ii) adjustment of the data transfer rate need not take place under the control of the helper server; and (iii) no determinations were made during claim construction regarding whether adjustment of the data transfer rate must be performed for the purpose of "reducing latency" (a potential requirement that appears only in the preamble of Claim 16), but previous statements made by Plaintiff during *inter partes* review, and that are unrebutted in its opposition, support the conclusion that Plaintiff considered reducing latency to be a requirement of Claim 16.

Based on the foregoing, the following genuine issues of material fact are presented: (i) whether ▊▊▊ is a type of "quality adaptation" or is different from quality adaptation in a meaningful way; and (ii) whether the accused systems adjust the data transfer rate in a way that "reduc[es] latency." Because these fact issues are present with respect to the claim as interpreted, summary judgment is not appropriate as to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

Claim 16 of the '213 Patent.

    b)  Claims 3 and 9 of the '074 Patent

      (1)  "SM object"

Claims 3 and 9 both require "receiving [an] SM object" and "storing said SM object at said at least one HS if it is determined that there is sufficient disk space available." The parties did not seek construction of these phrases during claim construction. Unlike Claim 16 of the '213 Patent's limitation, which includes "receiving *a request for* an SM object," the plain language of Claims 3 and 9 of the '074 Patent suggest that to meet these claims, a helper server will receive a full SM object for storage. This is consistent with the specification, which describes helper servers receiving SM objects and storing them in "chunks." *See, e.g.*, '074 Patent at 10:48–49 ("When an SM object is streamed to a HS **22-24**, it is stored on a disk chunk-by-chunk, continuously from the beginning of the SM object."). It is also reflected in the analysis of the Claim Construction Order. *See* Dkt. 148 at 16–17.

The accused system relies on proxy servers from two third-party companies: ▇▇▇▇▇▇▇▇▇▇ Plaintiff does not dispute that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Plaintiff does not present evidence to show how ▇▇▇▇▇▇▇▇▇▇ satisfy the requirement of "receiving [an] SM object" at the helper server, as the term "SM object" has been construed. Having failed to do so, Plaintiff cannot maintain a material fact dispute with respect to infringement by this accused system.

As to the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 272-3 at 24. Plaintiff also presents evidence that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Dkt. 428-1 at 20 (citing Deposition of Jason D. Utz, Rule 30(b)(6) Witness for ▇▇▇▇ Dkt. 428-9 at 62:4–65:10). Defendant has not otherwise addressed this aspect of the dispute in its reply. Based on a review of the evidence presented, there is a triable issue of fact as to whether the accused products, when using Level 3's proxy servers, meet this limitation of the claims.

      (2)  Order of Steps

The parties' second dispute for Claims 3 and 9 of the '074 Patent concerns whether the steps of the claims must be performed in a particular order. The parties also dispute whether certain claim steps must be performed "in response to" the claimed helper server receiving an SM object. Claims 3 and 9 each includes a roman numeral next to each of the recited claim limitations.

"Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001). Here, the claim steps are numbered using roman numerals and for this reason "actually recite an order." *Id.* The "receiving said SM object" step of Claims 3 and 9 must occur before steps (ii) through (iv).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

Notwithstanding this process, the claims simply require "receiving said SM object" followed by "determining whether there is a disk space available on said one of said plurality of HSs." Defendant's interpretation of the claims would require not only that the "receiving" step occur before the "determining" step, but that the "determining" step be performed "in response to" receiving an SM object. That requirement is not reflected by the plain language of the claims, and insufficient support has been provided for incorporating such a limitation into the claims.

The parties largely agree that ████████████████████████████████████████████████████████████████████████████████████████████████. At the hearing, Plaintiff characterized the deletion/receiving at the proxy servers as occurring simultaneously. Whether, and if so, what portions of these processes infringe the claim language presents disputed issues of material fact. Therefore, summary judgment is precluded with respect to Defendant's accused systems involving ███ edge servers.

      2.      <u>Divided Infringement Motion</u>

Defendant also argues that, based on the undisputed facts, Plaintiff cannot show as a matter of law that Defendant directly infringes the claims.

The parties do not dispute that Claim 16 of the '213 Patent and Claims 3 and 9 of the '074 Patent focus entirely on the actions of the helper servers. The parties also do not dispute that in the accused system, Defendant does not own the alleged helper servers. Instead, it contracts with third parties Akamai and Level 3 to use their edge servers to deliver streaming content to client computers.

Defendant argues that, because it does not itself perform a single step of the claims – instead, each step is performed by either a Level 3 or Akamai edge server -- Defendant cannot directly infringe the claims under a divided infringement theory.

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007)). "Where more than one actor is involved in practicing the steps," direct infringement under a divided infringement theory may occur when "the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.* An entity may be held responsible for the performance of method steps by others "where that entity directs or controls others' performance," or "where the actors form a joint enterprise." *Id.*

The parties have cited other district court decisions that address whether a party directing and controlling the acts of another party without itself performing any steps of the claim can still be accused of direct infringement under a divided infringement theory. However, this question was also addressed in *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1351 (Fed. Cir. 2018). In *Nalco*, the Federal Circuit reversed an order granting a motion to dismiss. The Federal Circuit considered the plaintiff's divided infringement allegations in the complaint. They included that a third party testing facility performed "pilot scale testing"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

by performing "each step of the methods claimed in the [asserted patent] at the direction and control of [Defendants]." *Id.* at 1352. *Nalco* then concluded:

> these allegations adequately plead attribution of the testing activities to Defendants. Whether as part of the pilot-scale or full-scale testing, [Plaintiff] alleges that the facility conducting the test engages in a specified activity—performing each step of the methods claimed in the [asserted patent] as part of the testing. [Plaintiff']s pleading also alleges that performance of testing can be attributed to the actions of Defendants—this performance is conditioned on obtaining monetary benefits for performing the test requisitioned by Defendants. For the purpose of the attribution analysis, it does not matter whether the facility conducting the test is an educational facility, a non-Defendant coal-fired power plant, or a named Defendant; what matters is that, according to [Plaintiff']s allegations, the testing can be attributed to Defendants because the facility performing the test, and therein allegedly using the method described in the [asserted patent], was directed to do so by Defendants.

*Id.* at 1353.[4]

Defendant argues that this outcome is inconsistent with analyses of induced infringement and concerns about double recovery. However, *Nalco* shows that those policy arguments are unpersuasive.[5] Defendant also cites other general statements in the *Akamai v. Limelight* decisions to support its position. However, these decisions presented factual disputes different that the ones at issue here and in *Nalco*. *See, e.g.*, *Akamai*, 797 F.3d at 1025 ("the facts Akamai presented at trial constitute substantial evidence from which a jury could find that Limelight directed or controlled its customers' performance of each **remaining** method step." (emphasis added)). In sum, based on *Nalco*, summary judgment is inappropriate.

The parties also addressed other issues with respect to the divided infringement issue. The parties agree that, assuming Defendant can maintain a divided infringement theory under the circumstances presented, whether Defendant directs and controls the third-party proxy servers, which Defendant would have to show to prove that theory, is a question of fact. *See* Dkt. 415 at 10. The parties also apparently agree on the dates when Defendant received actual notice of alleged infringement for purposes of Plaintiff's

---

[4] Claim 1 of the asserted patent in *Nalco* states:

> 1. A method of treating coal combustion flue gas containing mercury, comprising:
> injecting a bromide compound that is a thermolabile molecular bromine precursor into said flue gas to effect oxidation of elemental mercury to a mercuric bromide and providing alkaline solid particles in said flue gas ahead of a particulate collection device, in order to adsorb at least a portion of said mercuric bromide.

883 F.3d at 1342–43.

[5] Both of the district court cases cited by Defendant predate *Nalco*. *See Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963 (N.D. Cal. Feb. 21, 2018); *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016 (N.D. Cal. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV17-04146 JAK (PLAx) | Date | April 30, 2019 |
|---|---|---|---|
| Title | Sound View Innovations, LLC v. Hulu, LLC | | |

induced infringement allegations. *See id.* Therefore, summary judgment is also denied as to these matters.

### IV.     Conclusion

For the reasons stated in this Order, Defendant's Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 6,708,213, 6,757,796, and 9,462,074 (Dkt. 255, 268) is **GRANTED-IN-PART** with respect to infringement of Claims 3 and 9 of the '074 Patent by the portions of Defendant's accused system that relies on ▉▉▉▉ proxy servers. The Motion is **DENIED** in all other respects. Defendant's Motion for Summary Judgment as to No Direct Infringement and Partial Summary Judgment of Limited Induced Infringement of U.S. Patent Nos. 6,708,213, 6,757,796, and 9,462,074 (Dkt. 253) is **DENIED**.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |